IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EMPISH THOMAS, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE NO. 1:13-cv-00656-TCB |
| v. | ) ) | |
| BRANCH BANKING AND TRUST COMPANY, | ) ) ) | |
| Defendant. | ) | |

## DEFENDANT BRANCH BANKING AND TRUST COMPANY'S MOTION TO STRIKE CLASS ACTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Branch Banking and Trust Company ("BB&T"), files the instant Motion to Strike Class Action and Motion to Dismiss pursuant to Rules 23(d)(1)(D) and 12(b)(1) of the Federal Rules of Civil Procedure for the reasons set forth in BB&T's Memorandum of Law in Support, which is incorporated by reference.

Dated: February 21, 2014

DUANE MORRIS LLP

By: s/ William D. Barwick
 William D. Barwick
 GA Bar No. 041025
 1075 Peachtree Street NE, Suite 2000

Atlanta, GA 30309-3929
Telephone: 404-253-6970
Facsimile:  404-506-9228
Email: wdbarwick@duanemorris.com


*ADMITTED PRO HAC VICE*
J. Colin Knisely, Esq.
PA Bar No. 202694
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215-979-1112
Facsimile:  215-689-4929
Email: cknisely@duanemorris.com

*Attorneys for Defendant, Branch*
*Banking and Trust Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EMPISH THOMAS, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE NO. 1:13-cv-00656-TCB |
| v. | ) ) | |
| BRANCH BANKING AND TRUST COMPANY, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BRANCH BANKING AND TRUST COMPANY'S MOTION TO STRIKE CLASS ACTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Branch Banking and Trust Company ("Defendant" or "BB&T"), by and through its undersigned counsel, Duane Morris, LLP, hereby submits this Memorandum of Law in Support of its Motion to Strike Class Action and Motion to Dismiss (the "Motion") pursuant to  Rules 23(d)(1)(D) and 12(b)(1), seeking the entry of an order dismissing the Complaint (the "Complaint") filed by the Plaintiff, Empish Thomas ("Plaintiff" or "Thomas"), in the above-captioned matter, and, in support thereof, states as follows:

## I.   INTRODUCTION

Plaintiff commenced this action through filing a Class Action Complaint on February 28, 2013, alleging that two specific ATMs owned by BB&T were not in compliance with certain ADA guidelines.  While BB&T had a plan in place to make all of its ATMs compliant since 2010, and that the vast majority had been either replaced or upgraded by the time Plaintiff commenced her lawsuit, the two ATMs identified by Plaintiff were, in fact, not yet replaced/remediated under such compliance plan at the time suit was commenced.  However, during the pendency of this action, the ATMs identified by Plaintiff were made fully compliant with the ADA and the regulations promulgated pursuant thereto.  Accordingly, Plaintiff's claims are now moot, and the Court is without subject matter jurisdiction, requiring dismissal of the Complaint at this time.

## II.   FACTUAL BACKGROUND

Plaintiff alleges a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. and its implementing regulations, and specifically the 2010 Standards for Accessible Design.  The deadline for compliance with the 2010 Standards was March 15, 2012.

BB&T, which has over 2,400 ATMs, had an ADA compliance plan (the "Compliance Plan") in place prior to the March 15, 2012 deadline, pursuant to

which it was upgrading or replacing all of the ATMs in its network.  However, Plaintiff commenced the instant action alleging that she visited two of BB&T ATMs that had not yet been replaced, one located at 2230 Scenic Highway North, Snellville, Georgia, and a second located at 4700 Lawrenceville Highway NW, Lilburn, Georgia.  *See* Complaint at ¶ 10.  While Plaintiff does not provide any detail as to the circumstances surrounding her alleged visits to the subject ATMs, Defendant does not dispute that the subject ATMs had not yet been repaired pursuant to BB&T's Compliance Plan prior to the commencement of the suit.

Based on her singular visit to the subject BB&T ATMs, Plaintiff filed her Complaint seeking injunctive relief, the right to monitor ADA compliance, certification as a class action lawsuit, and an award of costs and attorneys' fees. However, BB&T has now fully upgraded the ATMs which are the subject of Plaintiff's suit, which necessarily makes Plaintiff's claims moot.  *See* Affidavit of Mark Piper, Senior Vice President, BB&T ATM Channel Manager ("Piper Aff."), a true and correct copy of which is attached hereto as Exhibit "A" at ¶ 2.  Notably, no class has been certified in this action and there can be no dispute that the only ATMs at issue in this case are those identified in Plaintiff's Complaint.

## III.   LAW AND ARGUMENT

### A.   Standard for Motion to Dismiss

As noted by this Honorable Court, a request for dismissal based upon a standing challenge is made pursuant to Rule 12(b)(1).[1]  Opinion at p. 3.  When evaluating such a challenge, "the Court must dismiss a case if it lacks subject-matter jurisdiction at any stage of the proceeding."  *Id.* citing *Cormier v. Horkan*, 397 F. App'x 550, 551 (11th Cir. 2010).

A challenge to subject matter jurisdiction can be "facial" or "factual." *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. Fla. 2008). As summarized by the Court in *Makro*, a factual attack "challenge[s] subject matter jurisdiction in fact, irrespective of the pleadings."  Further,

> "In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits."  Since such a motion implicates the fundamental question of a trial court's jurisdiction, a "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" without presuming the truthfulness of the plaintiff's allegations.

---

[1]      BB&T previously filed a Motion to Dismiss, which was denied by Order and Opinion dated October 16, 2013, Document No. 14 (the "Opinion").  Importantly, the prior Motion to Dismiss dealt with entirely different issues as, at that time, Plaintiff's claims had not yet been mooted by the replacement of the allegedly offending ATMs.  Accordingly, none of the issues raised in the instant Motion to Strike Class Action and Dismiss Complaint were raised, or could have been raised, in the prior Motion to Dismiss.

*Id.* (internal citations omitted).

The instant Motion presents a factual attack on Plaintiff's Complaint, as the Court lacks jurisdiction based upon facts which have developed during the pendency of this litigation and are not reflected in Plaintiff's Complaint.[2]

## B.   Plaintiff Is Without Standing As Her Claims Have Become Moot During the Pendency of This Action.

### 1.   The Standing Doctrine

Any party that seeks to invoke federal jurisdiction must first establish standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  A plaintiff must show that he has "'alleged such a personal stake in the outcome of the controversy' as to warrant her invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on her behalf."  *Warth v. Seldin,* 422 U.S. 490, 498 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  Standing is a limitation on judicial power and, as such, a court can address it at any stage without motion by either party.  *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 838 (3d Cir. 1996).  The party invoking federal jurisdiction bears the burden of establishing the elements of standing.  *Lujan*, 504 U.S. at 561.

---

[2]   It should be noted that Defendant's prior Motion to Dismiss was deemed a "facial" attack as it was limited to addressing "the plaintiff's allegations alone." Opinion at p. 4.

The Supreme Court has held that Article III of the Constitution contains three requirements for standing:  (1) a plaintiff must first establish a case or controversy by alleging an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural"; (2) the injury must be fairly traceable to the challenged action of the defendant; and (3) it must be likely, rather than speculative, that the injury will be "redressed by a favorable decision."  *Id.*  These three requirements are the constitutional minimum, not simply pleading requirements, and the Supreme Court has held that they are an "indispensable part of the plaintiff's case."  *Id.*  Since the Plaintiff is the party invoking federal jurisdiction, the Plaintiff bears the burden of establishing the three elements of standing.  *Id.*

Additionally, a plaintiff seeking injunctive relief, such as Thomas, must also satisfy the requirements articulated by the Supreme Court in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  In *Lyons*, the plaintiff alleged that, after being stopped for a traffic violation, he was injured when police placed him in a chokehold.  *Id.* at 97.   Plaintiff sought injunctive relief to prevent the police from utilizing chokeholds.  *Id.*  In denying Plaintiff's claim for injunctive relief, the Court set forth a specific standard that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if

6

unaccompanied by any continued, adverse effects." *Id.* at 102 (*quoting O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). The Court held that "emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Id.* Since injunctive relief relates to future conduct, a plaintiff must demonstrate that he "has sustained or is immediately in danger of sustaining some direct injury." *Id.* (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 448 (1923)). Further, "the injury or threat of injury 'must be both real and immediate,' not 'conjecture' or 'hypothetical.'" *Id.* (quoting *Golden v. Zwickler*, 394 U.S. 103, 109-110 (1969); *Public Workers v. Mitchell*, 220 U.S. 75, 89-91 (1947)). Thus, while a plaintiff may allege that he or she fears future injury, the Court's requirement focuses on the reality of the threat, not any subjective concern of the plaintiff. *Id.* at 107.

**2.    Plaintiff's Claims Are Now Moot.**

As set forth above, the subject ATMs are now completely compliant with the applicable ADA requirements. As such, the law is clear that Plaintiff is now without standing because her claims are moot. The United States District Court for the Middle District of Florida recently addressed a particularly similar factual scenario in *Scott v. Cash To Go, Inc.*, 2013 U.S. Dist. LEXIS 59980, 3-4 (M.D. Fla. Apr. 26, 2013). The Plaintiff in *Scott*, a blind individual, commenced a

7

putative class action based upon an allegation that she visited one of the Cash to Go, Inc.'s ATM machines and it was not accessible to individuals who are blind. *Id*. at *1.   Accordingly, Plaintiff sought declaratory and injunctive relief and attorney's fees and costs pursuant to the ADA.   *Id*. at *2.   The Defendant moved to strike the class action and dismiss the Complaint on the basis that the Defendant had voluntarily replaced the subject ATM with an ADA-compliant one during the pendency of the litigation and, therefore, Plaintiff's claims were moot.   *Id*.

In evaluating the Defendant's Motion, the *Scott* Court first noted that "Article III of the U.S. Constitution limits the jurisdiction of federal courts to adjudicating actual cases or controversies.   '[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.   If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed.'"   *Id* at * 3-4, quoting *Troiano v. Supervisor of Elections,* 382 F.3d 1276, 1282 (11th Cir. 2006).

However, "the standard […] for determining whether a case has been mooted […] is stringent.   A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be

expected to recur." *Id*. at *4 quoting *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).

The *Scott* Court then acknowledged and applied the three part test developed in *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir. Fla. 2007) to determine whether allegedly wrongful conduct could reasonably be expected to recur: "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Id*. at 1184. The *Scott* Court found all factors supported a finding that the conduct was not likely to recur and, thus, the Plaintiff's claims were appropriately dismissed as moot and the class action stricken.

First, the Court found that the challenged conduct was not a continuing practice as the subject ATM was replaced with an ADA-compliant one, and all of Defendant's other ATMs had also been updated. The Court also found that "Defendant [is not] likely to spend money to replace its current, compliant ATMs with non-compliant ones after completing the time-consuming and expensive project of updating them all." *Scott*, 2013 U.S. Dist. LEXIS 59980 at *6.

In evaluating the second factor, the Court found that:

9

> Defendant's cessation was motivated by a genuine commitment to compliance rather than a desire to avoid liability. Plaintiff encountered the subject ATM and brought suit in January 2013. At that time, Defendant had already begun a program of ensuring that its ATMs were ADA-compliant. Specifically, in 2012, Defendant hired an outside contractor "for the purpose of inspecting the roughly 300 ATMs owned by [Defendant], [and] confirming that they complied with ADA standards . . . ." Defendant was thus already working towards updating its ATMs before the instant action was initiated. Even if the subject ATM was not replaced until after Plaintiff brought suit, the Court is satisfied that because Defendant had already begun making changes to its ATMs at the macro-level of its business, its voluntary cessation was not solely motivated by a desire to avoid liability but was in line with a pre-existing genuine intention.

*Id*. at *6-7.

Finally, as to the last prong the three-part test, the Court found that there was no dispute that the subject ATM was non-compliant and that the Defendant had "acknowledged its lack of compliance." *Id*.

In this case, there is no question that BB&T satisfies the test enunciated in *Sheely* and correctly applied in *Scott*. First, the ATMs that are identified in Plaintiff's Complaint have been made fully ADA compliant. Piper Affidavit at ¶ 2.

Second, BB&T's "voluntary cessation" of the allegedly offending conduct was clearly motivated by a genuine commitment to compliance as the Compliance Plan was in effect well before the commencement of the instant litigation.

Specifically, BB&T began developing the Compliance Plan in September 2010 and working with vendors in December of the same year regarding the logistics for replacement and upgrades of the ATMs.  Piper Aff. at ¶¶ 3-4.  From that point forward, BB&T began systematically upgrading and replacing all of its ATMs with ADA compliant machines.  Piper Aff. at ¶ 5.  As such, there can be no question that the ATMs which are the subject of this lawsuit were replaced pursuant to the Compliance Plan, begun in 2010, and not in response to Plaintiff's suit, commenced over three years later.  Piper Aff. at ¶ 6.

Third, BB&T never disputed the fact that the subject ATMs were not in compliance with the new ADA standards.  Rather, BB&T's defense of this action was based solely on the safe-harbor provided under the ADA to the extent that requiring all of BB&T's ATMs to be ADA compliant as of March 15, 2012, would have been an undue burden.  However, there was never an effort by BB&T to avoid making the subject ATMs ADA-compliant.

Thus, there can be no doubt that Plaintiff's claims have been mooted, and there is no danger that the allegedly offending conduct is likely to recur.

## IV.   <u>CONCLUSION</u>

Plaintiff's ADA claims have become moot during the pendency of this action and she is, therefore, without standing.  Since the Plaintiff lacks standing, the Court lacks subject matter jurisdiction over her claims and the Complaint should be dismissed.  Therefore, Defendant Branch Banking & Trust Company respectfully requests that this Court grant its Motion to Strike Class Action and Motion to Dismiss pursuant to Rules 23(d)(1)(D) and 12(b)(1), dismissing Plaintiff's Complaint with prejudice.

Dated:  February 21, 2014             DUANE MORRIS LLP

                                      By:  <u>s/ William D. Barwick</u>
                                            William D. Barwick
                                            GA Bar No. 041025
                                            1075 Peachtree Street NE, Suite 2000
                                            Atlanta, GA 30309-3929
                                            Telephone: 404-253-6970
                                            Facsimile:  404-506-9228
                                            Email: wdbarwick@duanemorris.com

                                            *ADMITTED PRO HAC VICE*
                                            J. Colin Knisely, Esq.
                                            PA Bar No. 202694
                                            Duane Morris LLP
                                            30 South 17th Street
                                            Philadelphia, PA 19103
                                            Telephone: 215-979-1112
                                            Facsimile:  215-689-4929
                                            Email: cknisely@duanemorris.com

                                            *Attorneys for Defendant BB&T*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the court in N.D. Ga. L.R. 5.1(C) and 7.1(D).

By:  <u>s/ William D. Barwick</u>
        William D. Barwick (041025)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EMPISH THOMAS, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>BRANCH BANKING AND TRUST COMPANY,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION FILE NO.<br>    1:13-cv-00656-TCB |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of February, 2014, a true and correct copy of Defendant BB&T's Motion to Strike Class Action and Motion to Dismiss pursuant to Rules 23(d)(1)(D) and 12(b)(1) in support thereof was filed with the U.S. District Court for the Northern District of Georgia, Atlanta Division and served upon the following by ECF electronic filing:

        Anthony C. Lake (aclake@gwllawfirm.com)
        Thomas A. Withers (twithers@gwllawfirm.com)
        Gillen, Withers & Lake, LLC
        8 E. Liberty Street
        Savannah, GA 31412

        By:  <u>s/ William D. Barwick</u>
               William D. Barwick (041025)