IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EMPISH THOMAS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BRANCH BANKING AND TRUST COMPANY, <br><br> Defendant. | CIVIL ACTION FILE <br><br> NUMBER 1:13-cv-656-TCB |

**O R D E R**

This case is before the Court on Defendant Branch Banking and Trust's motion to dismiss [21]. The motion will be granted.

**I.   Background[1]**

Plaintiff Empish Thomas is legally blind and therefore a member of a protected class under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. She visited two automated teller machines owned and operated by BB&T but was unable to use the ATMs because they did not comply with

---

[1] The following facts come from Thomas's complaint.

the 2010 ADA Standards for Accessible Design.  The ATMs lacked required features, including voice-guidance, Braille instructions, and function keys with tactile buttons.  Thomas avers that BB&T has no institutional policy to ensure its ATMs are ADA-compliant, but as discussed below, BB&T presents evidence to the contrary.

On February 28, 2013, Thomas filed this putative class action against BB&T seeking declaratory judgment and injunctive relief for violations of the ADA.  BB&T now moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject-matter jurisdiction to hear this action.  Because it has brought the offending ATMs into compliance, BB&T claims that the action is now moot.  Additional facts relating to mootness are discussed below.

## II.   Legal Standard

Article III of the United States Constitution limits the subject-matter jurisdiction of the federal courts to active cases and controversies.  *See Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (quoting U.S. CONST. art. III, § 2).  The Court must dismiss an action if it lacks subject-matter jurisdiction at any stage of the proceeding.  *Cormier v. Horkan*, 397 F. App'x 550, 551 (11th Cir. 2010) (citing *Goodman ex rel. Goodman v.*

*Sipos*, 259 F.3d 1327, 1332 n.6 (11th Cir. 2001)).  Attacks on subject-matter jurisdiction come in two forms: facial and factual.  *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997).  A facial attack requires the Court to look only to the complaint to determine whether it has subject-matter jurisdiction.  *Id.*  On the other hand, when reviewing a factual attack, the Court may look beyond the complaint to determine whether subject-matter jurisdiction exists "in fact, irrespective of the pleadings."  *Id.*

When analyzing a factual attack, the Court is free to weigh evidence and need not assume the truth of the plaintiff's averments.  *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008).  BB&T lodges a factual attack; it does not claim that Thomas fails to allege subject-matter jurisdiction on the face of her complaint, but instead that events occurring after Thomas initiated this action have rendered it moot.  *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (explaining that factual attacks challenge the basis for subject matter jurisdiction "in fact, irrespective of the pleadings" (internal quotation marks omitted)).

Mootness undermines subject-matter jurisdiction because "an action that is moot cannot be characterized as an active case or controversy."

*Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). An action is moot "when it no longer presents a live controversy" about which the Court can fashion relief. *Fla. Ass'n of Rehab Facilities, Inc. v. Fla. Dep't of Health & Rehab Servs.*, 225 F.3d 1208, 1216-17 (11th Cir. 2000). An action that starts out as a live case or controversy can later become moot; "[i]f events that occur subsequent to the filing of a lawsuit . . . deprive the [C]ourt of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed." *Al Najjar*, 273 F.3d at 1336.

However, an "important exception" exists to the mootness doctrine: voluntary cessation. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183 (11th Cir. 2007). The Eleventh Circuit explained this exception thusly:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is *stringent*: A case *might* become moot if subsequent events made it *absolutely* clear that the allegedly wrongful behavior *could not reasonably be expected to recur*.

*Id.* at 1183-84 (emphases in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The party

claiming mootness—here, BB&T—bears the burden of showing that the voluntarily ceased conduct cannot reasonably be expected to recur.  *Id.* at 1384.  The Eleventh Circuit has described this burden as "formidable" and "heavy."  *Id.* (quoting *Laidlaw*, 528 U.S. at 190); *Sec'y of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992).  A bare statement by BB&T that it has no intention to restart the voluntarily ceased conduct does not suffice to show mootness.  *See Sheely*, 505 F.3d at 1184.

*Sheely* instructs that in determining whether an action is mooted by voluntary cessation, the Court should consider three factors: (1) whether the challenged conduct was isolated or intentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability.  *Id.*

### III.   Discussion

#### A.   BB&T's Contentions

BB&T contends that Thomas's ADA claims are moot because it has brought the offending ATMs into compliance with that law.  As evidence of that contention, it presents the affidavit of Mark Piper, a senior vice

president and "ATM Channel Manager" for BB&T. He states that the offending ATMs were ADA compliant as of January 17th, 2014. Importantly, he states that BB&T's efforts to bring the offending ATMs into compliance were not undertaken solely in response to Thomas's suit. Instead, its efforts were in accordance with a company-wide plan to bring *all* BB&T ATMs into ADA compliance. According to Piper, BB&T "began developing [that] plan . . . in September 2010," more than two years before Thomas brought this action. And BB&T began "systematically upgrading or replacing all of its ATMs" in accordance with that plan as early as December 2010. Piper says the two ATMs at issue were upgraded or modified as a part of that 2010 plan and not in response to Thomas's suit.

Thomas does not dispute the Piper affidavit in any respect. She does not claim that it is inauthentic or false, or that Piper lacks knowledge of the offending ATMs' compliance. In fact, she admits that the two offending ATMs are now compliant. *See* [26] at 16 (Thomas's response to BB&T's motion to dismiss, noting that "the Subject ATMs were apparently updated in late November or December 2014 [sic]"). In response, Thomas argues only that the Piper affidavit is not sufficient to carry BB&T's burden of

showing that its voluntarily ceased conduct has mooted her claim.[2] The Court disagrees.

### B. Sheely Factors

The Court finds that each of the three *Sheely* factors is met. *See Sheely*, 505 F.3d at 1184.

---

[2] Thomas argues that the Court must use the summary judgment standard—refusing to weigh evidence and resolving all reasonable inferences in her favor—to rule on BB&T's mootness motion. Not so. As discussed above, BB&T's motion is a factual attack on subject-matter jurisdiction. As the Eleventh Circuit has explained: because a factual attack "implicates the fundamental question of a trial court's jurisdiction, a 'trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case' without presuming the truthfulness of the plaintiff's allegations.'" *Makro*, 543 F.3d at 1258 (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)); *see also Scott v. Cash To Go, Inc.*, No. 6:13-cv-142-Orl-37KRS, 2013 WL 1786640, at *1 (M.D. Fla. Apr. 26, 2013) (applying this principal to dismiss as moot a nearly identical ADA-ATM action).

To be sure, there is an exception to this rule. The Court must use the summary judgment standard if the jurisdictional questions are intertwined with the merits of the plaintiff's claim. *See Lawrence*, 919 F.2d at 1525. But here they are not intertwined. The jurisdictional question here is whether BB&T's voluntary cessation has mooted the case—more specifically, the three *Sheely* factors about the nature of BB&T's voluntary cessation: whether it was timed to avoid liability, whether the offending conduct was widespread, and whether BB&T has admitted liability. None of those questions goes to the merits of Thomas's claim. To win on the merits, Thomas will face questions about whether she is disabled, whether the ATMs are public accommodations, whether they were noncompliant, whether making them compliant was an undue burden, etc. Those merits questions play no part in the jurisdictional-mootness analysis and are therefore not intertwined therein.

By way of comparison, consider similar ADA cases in which district courts held that jurisdictional questions *were* intertwined with merits questions. Each is dissimilar from this case. *See, e.g.*, *Petinsky v. 1800 Palm, LLC*, No. 13-23516-CIV, 2013 WL 6576863, at *4-5 (S.D. Fla. Dec. 13, 2013) (whether a bathroom was a public accommodation was both a jurisdictional and merits question); *Wichman v. Cnty. of Volusia*, 110 F. Supp. 2d 1354, 1361 (M.D. Fla. 2000) (whether the plaintiff's waiver of her ADA rights stripped the court of jurisdiction was also a merits question because her waiver could ultimately preclude ADA liability).

*First*, the offending conduct was not a continuing and deliberate practice.  After the 2010 ADA standards were promulgated, BB&T created a plan to overhaul each of its ATMs to meet those standards.  The fact that two of the company's 2,400 ATMs were not replaced for several years is not surprising and does not indicate that the violation was deliberate.

*Second*, BB&T's cessation of the offending conduct was not undertaken to avoid liability.  As explained in the uncontested Piper affidavit, BB&T initiated a company-wide plan to bring all ATMs into compliance with the 2010 ADA standards in September 2010, mere months after the standards were promulgated.  And that plan went into effect in December 2010.  BB&T both planned to retrofit and actually began retrofitting its ATMs more than two years before Thomas filed this action.  That the two offending ATMs were retrofitted only after this action was brought does not mean that the retrofitting was to avoid liability.  It is reasonable to assume that bringing 2,400 ATMs into compliance with a new set of ADA regulations may take several years.  And the fact that BB&T's plan to upgrade its ATMs was created and initiated before Thomas brought her action is persuasive evidence that its cessation was not timed to avoid liability.

*Third*, in voluntarily ceasing its offending conduct, BB&T has acknowledged liability. Nowhere in its filings in this case does BB&T dispute that the ATMs were noncompliant. Thomas argues that BB&T initially "disputed liability by invoking [the] affirmative defense" that bringing its ATMs into compliance would constitute an undue burden. But invoking that defense is not a claim that the ATMs were compliant. Quite the contrary: by invoking the undue burden defense, BB&T was *admitting* that its ATMs were noncompliant, but was seeking an extension or exemption from the standards because bringing them into compliance would have been a Herculean task. *See* [15] at 17, ¶ 3 (BB&T's answer, in which it raises the affirmative defense that "any . . . alleged noncompliance is the result of undue hardship or burden and compliance is not readily achievable, or would require fundamental alterations").

In other words, BB&T could not have invoked the undue burden defense while maintaining that its ATMs were compliant. Doing so would be nonsensical as it would require an argument along these lines: "our ATMs are fully ADA compliant, but we should not have to bring our ATMs into ADA compliance because doing so would be an undue burden."

### C. Reasonable Expectation of Recurrence

Even beyond the three *Sheely* factors, the ultimate standard for mootness based on voluntary cessation is met here because the alleged violation cannot reasonably be expected to recur. *See Laidlaw*, 528 U.S. at 189 ("'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968))). BB&T would gain nothing from reversing the modifications that brought its ATMs into ADA compliance. Now that it has spent time and money making the offending ATMs compliant, it cannot be reasonably expected that BB&T would undo that effort and spend additional time and money to purposely return its ATMs to a state of noncompliance.

This case's facts differ from those in *Sheely*, where the defendant voluntarily ceased the offending conduct but had a plausible motivation to resume it. *See Sheely*, 505 F.3d at 1189 (explaining that there was ample reason to suspect the defendant may return to its old ways if the case was dismissed as moot).

Here, there is no motivation to relapse. Relapse into noncompliance—by, for instance, removing tactile function keys or Braille instructions—would not only expose BB&T to liability in later suits, but would also be costly. There is no reason to believe that BB&T would spend money "de-retrofitting" its now-compliant ATMs to a state of noncompliance.

Notably, Thomas does not aver that once-compliant ATMs have fallen into noncompliance. That is, this case contains no allegations or evidence that BB&T has failed to *keep* its ATMs in compliance. This case is solely about BB&T's failure to timely implement one-time modifications to its ATMs after the promulgation of the 2010 ADA standards.

If, hypothetically, Thomas brought allegations that BB&T failed to perform proper maintenance on its ATMs, the result here might be different. If BB&T's ATMs seesawed between compliance and noncompliance, there would be a reasonable expectation of recurrence, which would likely suffice to defeat a mootness challenge. Alternatively, that type of repetitive injury could be classified as one not capable of judicial review that could not be mooted by voluntary cessation. *See generally L.C. by Zimring v. Olmstead*, 138 F.3d 893, 895 n.2 (11th Cir.

1998), *aff'd in part, vacated in part sub nom., Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). But no such allegations exist here.

Thomas vaguely argues that the Court should retain jurisdiction to ensure BB&T's future compliance, but that goes too far. The Court cannot expand an action for one type of harm—failure to upgrade ATMs—to broadly monitor a defendant's actions and ensure that another type of hypothetical, unalleged and unproven harm—failure to maintain ATMs—does not occur. That is especially true after the complained-of harm has been eliminated. Doing so would impermissibly expand the Court's jurisdiction beyond any conception of an active case or controversy.

### D.     Thomas's Response

For her part, Thomas principally cites one case in support of her argument that her claim is not moot. But that case is distinguishable. In *Sawczyn v. BMO Harris Bank National Ass'n*, ___ F. Supp. 2d ___, No. 13-2309 (RHK/SER), 2014 WL 1089790 (D. Minn. Mar. 19, 2014), a Minnesota district court faced a remarkably similar set of facts. A plaintiff brought an ADA-compliance action against BMO Harris Bank, alleging that two of its ATMs contravened the same 2010 ADA standards at issue here.

The plaintiff alleged that the ATMs lacked several required features including, importantly, tactile symbols.

BMO Harris moved to dismiss on mootness grounds. It offered the affidavit of a company vice president who stated that the offending ATMs were at one time deficient but that their malfunctioning voice-guidance systems and headphone jacks had been replaced. The court found this evidence insufficient to show mootness because it did not reach the ultimate question of whether the ATMs were fully ADA-complaint. The affiant did not state that the ATMs were fully compliant, and the affidavit ignored one of the plaintiff's specific complaints of noncompliance: it did not state that the ATMs were retrofitted with tactile symbols.

Here, BB&T specifically states that the offending ATMs are fully ADA-compliant. Unlike the BMO Harris vice president's affidavit, which only contained an "implication . . . that the ATMs are compliant," but no explicit statement to that effect, the affidavit here contains more than mere implications. Piper, the BB&T vice president, states unequivocally that he

> can confirm that as of the date of the execution of this Affidavit, the [offending] ATMs located at 2230 Scenic Highway North, Snellville, Georgia and 4700 Lawrenceville Highway NW, Lilburn, Georgia, are *fully compliant* with the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and its

13

> implementing regulations, and specifically the 2010 Standards for Accessible Design.

[21-1] at ¶ 2 (emphasis added). No leap of faith is required here as in *Sawczyn* to find that the ATMs are compliant; Piper explicitly declares that the once-offending ATMs are now compliant. And the Piper affidavit, unlike the one in *Sawczyn*, leaves no specific complaint unaddressed.

Further, the court in *Sawczyn* concluded that the bank's voluntary cessation did not moot the case because its compliance was "not entirely voluntarily, but rather prompted by the threat of costly litigation." *Id.* at *5 (citing *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952)). Supporting that conclusion was the "absence of any written corporate policy aimed at ensuring compliance." *Id.* at *6. The BMO Harris affiant merely stated that she "'routinely' tests [the bank's] ATMs." *Id.*

Again, this case is different. Piper states that BB&T initiated a plan in September 2010—well before Thomas brought this case—to update all its ATMs, that it began updating its ATMs in December 2010, and that the offending ATMs were updated as a part of that years-long plan. The presence of a written company policy distinguishes *Sawczyn* and renders inapplicable its conclusion that the bank's voluntary cessation did not moot the action.

### E. Mootness in a Putative Class Action

Thomas is the putative class representative. Because her claim is moot and the class has not been certified, the entire class action is moot and must be dismissed. *See Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot.").[3]

## IV. Conclusion

In sum: Thomas brought this action complaining that two of BB&T's ATMs were not in compliance with the ADA. BB&T has since brought the once-offending ATMs into compliance. It did so without denying that the ATMs were noncompliant. It did so as part of a company-wide policy to remedy noncompliant ATMs rather than simply in response to this suit.

---

[3] Although neither party discusses the point, the Court notes that because no class certification motion has been filed, the exception to this general rule set out in *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981), does not apply here. In *Zeidman*, the old Fifth Circuit held that "a plaintiff in a putative class action whose individual claims become moot prior to class certification may nevertheless have standing to pursue the class action if he has filed a motion for class certification and vigorously pursued it." *Bishop's Prop. & Invs., LLC v. Protective Life Ins. Co.*, 463 F. Supp. 2d 1375, 1378 (M.D. Ga. 2006) (citing *Zeidman*, 651 F.2d at 1034-36).

BB&T's voluntary cessation of its offending conduct has rendered Thomas's claims moot under *Sheely* and *Laidlaw*.  And because she is the putative class representative and class certification has yet to be decided, the mootness of her claims renders the entire action moot.

Accordingly, this action no longer presents an active case or controversy and is outside the Court's Article III jurisdiction.  Defendant's motion to dismiss [7] is GRANTED.

IT IS SO ORDERED this 23rd day of June, 2014.

_____
Timothy C. Batten, Sr.
United States District Judge